25-12, 35, Council. Good morning, Your Honors. David Lane. May it please the Court, on behalf of Sasha Cronick, I'm here with my counsel, my partner, who just participated in the last argument, Reid Allison, I think he'll probably be back in. This is an unusual circumstance for, I think, the Court. I've been talking to people, and they're saying, oh, well, I think it's a little bit              And I've been doing this for 46 years. Kilmer's been doing this for 40. In 86 years, we've lost jury trials in civil cases. This is the first appeal I have ever taken from a lost jury trial in a civil case. Because in my view, the errors that were committed in the Court below were so absolutely egregious that it's not nitpicking. It's not simply, oh, harmless error, harmless error, harmless error, which is the result of most errors in civil jury trials. That's not this case. This case, it was so fundamentally flawed in so many different ways that Sasha Cronick was, in fact, denied a completely fair trial. I've actually never seen anything like this. We start with the character evidence that was introduced. You call it character evidence. The district court ruled it was 404B evidence, right? Yes, that is correct. I don't think it fits into a single exception of 404B. It's, you know, did it prove motive? I mean, you have to understand also, the facts of this case were documented unassailably. There were body camera videos showing the incident in question. Sasha Cronick had her own cell phone showing the incident in question. So the actual facts of what happened forming the basis for the civil rights complaint, they were never in dispute. So 404B, I mean... Is your argument that the district court erroneously admitted these under 404B, is that your argument? Oh, absolutely, yes. You didn't make that argument in your brief. That's because I don't view this as 404B evidence. This is purely character evidence. It doesn't fall within any single exception to 404B or permitted uses. It doesn't show motive, opportunity, intent, preparation plan, knowledge, identity, absence of mistake, or lack of accident. None of those things related at all to the evidence that was brought in. What was brought in was purely character evidence, showing the jury that she is unhinged when she's dealing with the police. It is a consistent... You've seen the video. This is the second time this case has been up before, Your Honors. The video is... You know, you see her saving that guy's life who's stretched out on the sidewalk. The police come. They ask her her name. Frankly, I'm surprised she gave her name. She did. The officer then says, well, which unit do you live in? And she says, that's police harassment. I'm not going to answer that question. And this causes the officer, you know, understandably to kind of get his back up a little bit. I go, what do you mean? This isn't police harassment. And he says, well, you need to get out of here. And she says, no, I live here. And then he says, well, you need to leave. And she starts to turn. He then touches her, and you saw the reaction. Doesn't he say the immediate area? Yeah. And that's more precise. Yeah, I can't frankly remember the exact verbiage of what he said, but it's clearly in the record. The point is, she starts to turn away. And she yells at her husband. Yes. And then she starts to walk. He grabs her from behind. Is there a video that shows his hand on her? I haven't seen it. I've seen videos, but I haven't seen that one. I'm not sure. It's kind of like the Richard Ward case. Where his hands are is something, you know, possibly in dispute. But she clearly spins around and says, get your hands off of me. So there's some good evidence that he did touch her. And I don't think the officer ever disputed that at trial. And then she goes off. You know, and that's a challenge for me as plaintiff's counsel. This is my client base. These are the people I deal with. We would have stipulated that she doesn't like the police. Well, getting — I mean, this is all interesting. But getting back to Judge Rossman, I mean, you know, it was admitted under 404B. You didn't take on the ruling of the district court under 404B. You said, oh, it's character evidence that should have been excluded. I mean, don't you have to deal with the ruling of the district court under 404B? And I guess I'm going to add on to that. Did you make a 403 argument in your brief? Yes. 403 is at page 20, I think, of our opening brief. Okay. So, I mean, what do we do about the fact that you didn't take on the ruling under 404B? Well, actually, if you look at page 20 of our opening brief, you talk about 404B. Well, you cite the standard, but your argument is that the evidence was irrelevant and it was prejudicial. But you don't argue why it was erroneous to admit it under 404B. Not under 404B. We're saying that it wasn't 404B evidence. We're saying this is character evidence under 404A. It is simply designed to show she acted in conformity with her I hate the police mentality. So, yes, we don't specifically go through each factor in 404B and say it doesn't fit this criteria for admissibility. It doesn't fit that one. All the ones I just enumerated, it doesn't fit any of them. Well, the district court said it went to, among other things, her emotional distress. It goes to damages. Right. So it goes to damages. I mean, is that a proper purpose? No, that's not, for 404B, other crimes, that's not one of the exceptions. That's not one of the reasons 404B gives for admitting 404B evidence. It goes to damages. It doesn't. That's not a criteria. And the court below specifically said it goes to her credibility and to damages, which is neither one of which is part of 404B. And motive. The district court said it went to her motive, that she was looking for content she could monetize. Actually, counsel made that argument repeatedly. But I don't know that maybe it's not off the top of my head that the court said that. But in any event, none of those go to 404B. It all goes to character. And that's why we've made our arguments the way we did. We told the court below it doesn't apply to 404B. And this is nothing but irrelevant prejudicial character evidence. How videos taken years after the fact somehow relate to any aspect of 404B. Or 401. Yeah, I mean, it's completely irrelevant. I've read the orders from the magistrate and the district court, and it's just assumed that it's relevant. It says this is relevant evidence. But I never came across anything that said here's why. Here's a fact of consequence that makes more likely or less likely. And as you point out, the video kind of occupies the field. What was the court's rationale for saying it was relevant even? I think the court's rationale is the court was, frankly, very upset with either counsel or Ms. Kronick for disobeying a discovery order. And this was the sanction. I mean, and the sanction. Well, the sanction was the jury instruction, right? And the admissibility of all this illegal evidence that's completely irrelevant. I think they were both sanctions by the court. The jury instruction was over the top, in my opinion. You must presume she commits crimes on a regular basis and makes money off of it. So you're not – I want to make sure I understand. Are we moving to adverse inference in the instruction? Sure. Okay. So I want to make sure I understand the components of your argument. You're not contesting at this point that the district court had the authority to impose this presumption instruction under Rule 37B, right? Well, the adverse inference instruction? Yes, the number one, the presumption. Well, I mean, you may presume is different than you must presume. Well, I'm talking about the threshold basis. Did the court have the authority to impose an adverse inference instruction in this case? If the court found and the court did find, through no credible evidence as far as we're concerned, that there was a discovery violation, yes, then a sanction can be imposed. I agree with that. Okay. So then which portion of the presumption instruction, number one, is factually inaccurate? The presumption instruction, the jury must presume, first of all, it's an irrebuttable presumption that she regularly records police officers, which this was the first time she had ever recorded a police officer. After this incident, she then, this kind of set her off and went over the edge, and she continued to do it over the subsequent years. But she regularly records police officers, and those recordings demonstrate Ms. Cronick engages in behavior that is disruptive to police business. That is a crime under Colorado revised statute 18-8-104. Okay. So my question is, there could be multiple problems with a jury instruction, right?  It could be not supported by the evidence. It could be misleading.  Okay. So what portion of this is factually inaccurate? That she regularly engages in behavior that is disruptive to police business and that she profits from these recordings. Well, aren't the, I mean, that's apparent. I mean, if you look at the videos, both of those things are true. I mean, I have watched those videos. Yes. And not only do you see her engaging in disruptive behavior, but you also see her soliciting money. She solicits money. That's different than profiting from it. But in any event. How is that different? Well. You're saying she never got any? You don't really challenge that, though. That number two is not part of the appellate briefing that I've seen. I think your focus has been on number one and the components of it, and it's violative potentially of what we know the First Amendment to permit. Wasn't that your argument? Well, that is the argument, yes. I haven't. We did not brief whether she did profit or not. But the point I'm making here is that an irrebuttable presumption that she's out there committing crimes is different than what she's doing. And that is horrifically prejudicial. The other major point I've got three minutes left is that the court abdicated completely in allowing counsel for Colorado Springs to pick and choose whatever videos he wanted to pick and choose and gave him a half hour to go off and do whatever you want. And so a half hour of video turned into about a half a day's worth of video coupled with questions. In their brief, they make the point, oh, we only played 16 minutes of video. But 30 seconds of every clip resulted in a 10-minute cross-examination. And it consumed the whole trial, which was absolutely irrelevant, as Judge Phillips noted. The case that we were dealing with, there were no factual disputes. It was on video from 10 different angles. Everybody saw what was actually happening. And the only issue for the jury was, were Sasha Cronick's First Amendment rights violated? Given these videos, all this other stuff does nothing but dump on her character. She's a crazy woman who screams at cops. And we don't want her to win this case because these cops aren't doing anything wrong. And subsequent videos, they're trying to help a guy who's unconscious on the street. They're showing up on a domestic violence call. They're not doing anything wrong. And here she goes. I mean, that is overwhelmingly prejudicial. Can we talk about damages real quickly? Because that's the only relevance I can see. Did you cabin your emotional distress up to the criminal trial? I can't honestly remember the answer to that. I think I just said, clearly you can see she was emotionally distressed in the videos for getting arrested. And then, you know, I kind of left it up to the jury, if I recall correctly, closing argument to figure out, you know, how much. Got about 49 seconds left. Can I reserve it? Yes, sir. May it please the court. My name is Ryan Doherty. I'm here on behalf of Christopher Pryor and Robert McCafferty, the appellees. Counsel, let's start with rule 401.  Why is any of this relevant? What fact of consequence were these videos making more likely or less likely? Mrs. Kronick, throughout the trial, or throughout the course of the case, had suggested that she was not intending to stay there for any other reason than the... So her kids could see the problems with taking drugs. Yes. And that just clearly was not the case. But that didn't have to be part of the trial, the reason that she was standing there. The police don't have any problem with her standing there. First officer on the scene says, hey, I've got a camera that's really not necessary that you record. As though you can if you want, but it's already being covered. Then another officer arrives, comes all the way around her to get to the hotel room, doesn't say a word about her standing there videoing. And then the officer who interviewed her comes up and says, hey, could you put that down for a sec, because I need to ask you some questions. For a sec. Nobody says you can't video or you're causing a problem. And so it just seems like this is very tight. As counsel said, what we're talking about is the Fourth Amendment violation. And the only question is, the officer touched her apparently in some fashion. She says underneath the arm and he says maybe that way, I don't remember. There's a slight touch, we'd call it. And then truly she goes off and it's get your blankety blank hands off me, so forth, calls her husband. And then we have her handcuffed and arrested and in the car. That's the case right there. If you can tell me how videos taken months or years after that have anything to do whatsoever with that case that's in that little inch, that little moment of time. I'd really love to hear it, because that's my problem with your case. First, that the trial consisted of more than just those videos. There were body cams of the incident. There were eyewitnesses to the incident, both Miss Chronic and our officers and a fire person. What do you mean by the incident? Are you talking about more than the touch and move over here? I'm sorry for interrupting. I'm interrupting you, I apologize. I'm talking about the moment that you've identified. Okay. The incident where she was taken into custody for failure to disperse. And I ask about the videos, all these videos of months, years later conduct. What does that have to do with that incident? Miss Chronic, throughout the case, had demonstrated that this was the first time she'd done this. She couldn't record, she couldn't stay in a place where she shouldn't have been. Wait a minute. Even if you show videos from two years later, it still could be the first time she did it. I mean, that's part of your problem here. This is after this event. So I think then we need to step back and say, why do we have these videos? And it's because Miss Chronic deleted every other video that she had. Not only of this incident and the comments related to this incident, but everything thereafter as well. And these videos were only found because they had been deleted and stored in some aggregator. So everything else was... And that's fine. Sure. But, you know, you found these videos. They still didn't answer the question that Judge Phillips is asking. What is the relevance to the issues that were at trial here? Miss Chronic was asked to leave the scene. She did not leave the scene. She did not leave the scene because her pattern was to record, get a response, and then make money off that. So you contend that she was still videoing at the time that the officer told her to move? Yes. She had put her camera down when she was being interviewed. Yeah. She was holding it here. It was still recording. And he positioned himself between her and the person being resuscitated on purpose, right? That's correct. And so she wasn't filming anything then. And I don't know what she would have been filming in the fraction of a sentence when this thing all went ballistic. In other words, still searching and hoping for an answer on how is any of this relevant. I get it's great evidence for you. You bring that in, and I don't have any doubt that all the jurors' hairs curled listening to this and watching these statements and stuff, and they didn't want to give her any money. But that doesn't answer the question of how is it relevant. For a number of reasons. One, as the judge says, for damages context. Miss Chronic had alleged emotional distress damages. They had not been clarified or quantified in any manner. These videos demonstrate that if she was so emotionally distraught over this incident, she was still willing to call police, bring them to her, engage with them in a way for her profit. And it also demonstrates that because, again, she was always asking for compensation in these videos, which is in evidence, right? Additionally. But it's in evidence from the stuff that happened after the event that was being tried, right? Yes. In every instance, those videos were the only remaining videos that had not been deleted. Counsel, let's assume for argument's sake that they're relevant somehow to emotional distress damages or some other way. Your argument in your brief focused around Rule 404B and the Huddleston factors, and I don't see anywhere where the district court actually made a ruling in the way that your brief marshals the law. Did the district court admit this evidence, found it was relevant, found the admission wasn't? She said it was more probative than prejudicial. But where did the district court actually conclude that there was a permissible basis under Rule 404B for the admission of the videos? Sure. I mean, if you want, if you go through the appendix, it's anywhere between, you know, 600 and 800, which is really the briefing and the hearings related to. I've gone through it. The question that I have is that it seems that the parties litigated in their motion and limine a briefing for a 4B and the district court endorsed your argument about admissibility. But I don't see anywhere where the court made a ruling engaged in the analysis in the way that you do in your brief to seek affirmance. I would point you to Appendix 994 to 996, which is the order regarding plaintiff's trial brief and motion in limine. I do believe that I have more more argument in my brief here. However, this order was entered on the eve of trial because we've been arguing about this for some time. And so not only did she address it in which we don't have a transcript of the final pretrial conference where she addressed all the motions in limine that had been filed. But plaintiff's counsel then filed a trial brief, which she treated as a motion in limine as well. And I am directing you to the order on that. And if you have not seen that, that's where I would say that she does go through, say what the purpose of these were for, why they were not prejudicial in the sense of undue prejudice as the law allows for. And then also use her gatekeeping function to say, I'm not going to let you take over the whole trial here. You're going to get a very small leash. And the small leash was not only given to us. It was given to plaintiff's counsel as well, who also used the videos in his presentation to the jury. Even spotting that there, as I think Judge Rossman said, there's some relevance here. There's not a lot. And these videos seemed highly prejudicial to me. I mean, they certainly put the plaintiff in a very bad light. And to the extent that you're saying, you know, this is how she treats police officers. It seems to me that you're arguing propensity, which we don't allow. I mean, why shouldn't these have been, if nothing else, excluded under 403? If that argument had been, I'll step back and I'll say, we're not here to reweigh the evidence. We would submit that we're here to defer to the judgment. Well, the 404B analysis requires a prong of considering 403. Would you agree with that? That's correct. And so the court, if it lets it in under 404B, it necessarily has to consider 403. Yes. And I think she did. If I can point back to that order, for instance, that she entered, the last paragraph there, she's performing a gatekeeper function. She understands the prejudice that may underlie the videos. And she says, that's not good enough here. She said, it's undue prejudice. It may be bad for your case, but we're talking about undue prejudice. And it's the trial court. Right. I'm sorry. It's weighing. So if it's very probative of a relevant fact in the case, you'll put up with more prejudice than if it has almost no relevance. Right? I think that's fair. Sure. Okay. And I guess, you know, maybe what I'm having a hard time seeing that there was a lot of relevance to it. 404B, motive to what? To film? What I would rely on for the purposes of that is impeachment and contradiction where she's saying, I'm having trouble with emotional distress, but I'm still calling the police, telling them to come. Well, if you're having problems with emotional distress, you can't call the police anymore? No, that's certainly not what I'm saying, Your Honor. All right. But back to my question. Motive for what? If the basis for the Rule 404B is motive, then the question is, motive to do what? I don't think that is what the district court relied on. She didn't rely on the motive. I thought she said motive. Which ones did she rely on? I thought I heard motive and intent. No, it was emotional distress damages. Well, that's precisely the problem. She didn't rule. Well, she didn't. If we have four factors in Huddleston, and your brief marshals them quite effectively, the problem is that the district court doesn't engage in that analysis so that we can review it. I mean, the first prong is that it is admissible for a proper purpose under 404B. And, you know, emotional distress damages may be a reasonable argument about 401, but I will go back and look carefully at where you've pointed us to, but I don't see that the district court actually identified a basis for admission under 404B. On 995, appendix 995, in this case, plaintiff is seeking emotional distress damages against the defendants. The videos are of plaintiff and were filmed by plaintiff. Although the events documented in the videos took place after the incident that is at issue in this case, the demeanor of plaintiff and her conduct in the videos are of consequence to both plaintiff's claim of emotional distress damages and to her credibility. She then dips down into, I understand that you may view them as prejudicial. Evidence is not unfairly prejudicial simply because it's damaging to opponent's case. Was there a 404B discussion in there, what you just read, I didn't hear one. Not specifically, Your Honor. But these were in response, again, to motions in limine that were filed and the plaintiff's trial brief itself. Is damages, is it listed as a proper motive under 404B? Not specifically, Your Honor. But it's anything that would make a fact more or less probable. That's 401. That's correct, Your Honor. But I was stepping back there to say that would be the relevant standard. Well, relevance is one thing, but then 404B, because it's collateral information, it requires more than just a 401 standard. Like an explanation of what you're using it for. Motive, intent, plan, reparation, opportunity, intent. Name it. Those are all of them. Sure. And I've given you what, this doesn't have to be perfect from a district court's perspective. I've read you where I believe it most succinctly tells her reasoning there. And I think we're supposed to take her, because she is the trial judge, and closest to the evidence at her word. And so that's what I've attempted to do. I think even if that were the case, if you look at what were presented, I see I'm over time. You can finish your thought. Thank you, Your Honor. I understand there may be some problem here, but at the end of the day, this would be harmless error in R. If you even get to and find error here, it would be harmless. How can it be harmless error? Those videos are, I mean, they are not flattering to the plaintiff here. I mean, and I don't know how it could be harmless, because the video that we have, I don't think that it's overwhelming one way or the other. Of the actual incident. It's not overwhelming in what regard, Your Honor? I'm sorry. Can I come away saying that these other videos had no impact on the jury's decision here because the evidence with respect to the case that was at issue was so overwhelmingly against the plaintiff that this doesn't matter? I can't say that. Well, it would be, the case would have been against the defendants. Right. Right. But the evidence was against the plaintiff's claim. Correct, Your Honor. I understand what you're saying there. I apologize for the misunderstanding. There is no evidence and the plaintiffs, the appellants in this case, haven't pointed to any specific evidence that demonstrates that there was a substantial income, a substantial influence on the outcome. Whose burden is it? It is the appellant's burden to prove it. These are discretionary orders offered both for evidentiary purposes and trial management purposes. It's an abuse of discretion that this court should be using to view the appellant's brief and his claims or lack thereof in the case of 404B, as this court's mentioned. All right, counsel. Does that wrap it up? I thank you for your patience and I appreciate your consideration. Okay. Thank you, counsel. Counsel, you have 46 seconds, but we try to be fair on the time. You get the next couple of minutes if you need it. You don't have to take it. Probably don't need it. All I can say is we're a civil rights law firm. We have access to various police officer cases we've had over years. If we get a police officer and we're accusing that officer of excessive force, if this court finds this to be harmless error, if this court finds that there's no problem with introducing these subsequent videos, is there any way that we should be stopped in future cases from bringing in police videos of Officer Smith here who's beating up five other people down the road? I mean, the sideshow swallows the circus at that point. And that's exactly what happened here. We had about a half a day's worth of sideshow, which was extraordinarily prejudicial. And that is where the major error in this case occurred. So thank you very much. Thank you, counsel, for your arguments. Very helpful. The case is submitted. Counsel are excused.